IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| LORRIE WELLS, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:23-cv-05017-DGK |
| MARTIN J. O'MALLEY,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

### ORDER AFFIRMING THE COMMISSIONER'S DECISION

This case arises from the Commissioner of Social Security's ("the Commissioner") denial of Plaintiff Lorrie Well's applications for disability insurance benefits ("DIBs") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had several severe impairments, including breast cancer (status-post lumpectomy, chemo, and radiation) and acute intermittent porphyria, but she retained the residual functional capacity ("RFC") to perform a range of medium work with certain restrictions. The ALJ ultimately found Plaintiff could work as a kitchen supervisor, bag loader, dryer attendant, or box bender.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff applied for DIBs on March 16, 2020, alleging a disability onset date of September 1, 2018, with a date last insured of March 31, 2019 (the "Relevant Period"). The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing and, on January 11, 2021, issued a decision finding Plaintiff was not disabled. Plaintiff appealed the decision, and on September 16, 2021, the Appeals Council remanded the case for reconsideration. The ALJ held a second hearing on February 7, 2022, and again issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on January 24, 2023, leaving the ALJ's decision as the Commissioner's final decision. Judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

The Court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). Substantial evidence is less than a preponderance but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id*. In making this assessment, the Court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id*. The Court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The Court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**Discussion**

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Here, Plaintiff challenges the Step Two and Four findings. Plaintiff argues the ALJ erred by: (1) failing to evaluate her degenerative disc and facet disease ("Spine Impairment"); and (2) failing to support the RFC with medical evidence of her ability to function in the workplace. Plaintiff's arguments are unpersuasive.

**I.     The ALJ did not err when he failed to evaluate Plaintiff's Spine Impairment.**

Plaintiff alleges the ALJ erred when he failed to evaluate her Spine Impairment at Step Two. The Commissioner contends the ALJ had no obligation to consider the Spine Impairment because it was not alleged as a basis of Plaintiff's disability or raised at her hearing before the ALJ.

Plaintiff bears the burden of establishing a severe impairment during the Relevant Period at Step Two. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). An ALJ "is not obliged to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008). Plaintiff did not allege her Spine Impairment as a basis for her disability in her application for benefits.

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) [her] impairments, alone or combined, are medically severe; (3) [her] severe impairments meet or medically equal a listed impairment; (4) [her] residual functional capacity precludes [her] past relevant work; and (5) [her] residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that she is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

R. at 264. Nevertheless, Plaintiff maintains her testimony and the medical record made the ALJ aware of her Spine Impairment, and thus, under 20 C.F.R. § 404.1545(a)(2), he was required to consider it at Step Two.

Plaintiff's argument is unpersuasive. Plaintiff primarily relies on *Sanders v. Saul*, No. 18-CV-00023-SPM, 2019 WL 4750387 (E.D. Mo. Sept. 30, 2019). But *Sanders* is distinguishable because the claimant made specific statements regarding her knee and bulging disc/sciatic nerve pain. For example, the claimant stated: (1) her radiating pain was from a bulging disc and pinched nerve; (2) her treating physician recommended she consult with a rheumatologist about her knee troubles; and (3) she had osteoarthritis in both knees. *See id*. at *4. These were specific statements that brought the claimant's impairments clearly to the ALJ's attention.

The same is not true here. Plaintiff's testimony did not reference her Spine Impairment in any meaningful way. Plaintiff's counsel's opening statement addressed only Plaintiff's degenerative hip disease. *See* R. at 43; *see also* R. at 51 (stating the same at closing). Further, Plaintiff's testimony concerning her difficulty sitting and walking was provided only in response to her counsel asking, "[w]hat sort of problems led you to get the x-rays for your *hips*?". *See* R. at 44–46 (emphasis added). The only reference Plaintiff makes to her back is that it hurts after standing and sitting and she tries to stretch it to "make it work with [her] leg." R. at 44–45. These statements—made only in response to a question about her degenerative hip disease—are not sufficient to put the ALJ on notice of Plaintiff's Spine Impairment.

Further, the medical record—standing alone—does not provide ample evidence Plaintiff had a diagnosed Spine Impairment that contributed to her alleged disability during the Relevant Period. On March 20, 2019, a CT scan performed as part of Plaintiff's cancer treatment identified "degenerative disc and facet disease in the lumbar spine." R. at 625. The CT report, however, did

4

not indicate the severity of the condition or suggest a course of action. Plaintiff never sought treatment for her Spine Impairment, and, during the Relevant Period, routinely reported not having back pain. *See, e.g.*, R. at 631, 634, 637, 640, 643, 652, 658, 661, 664, 667, 670, 673, 676. Further, a September 2018 physical therapy record indicated only minor low back pain. R. at 538. These limited findings during the Relevant Period are not sufficient to put the ALJ on notice of Plaintiff's Spine Impairment or indicative that the Spine Impairment contributed to Plaintiff's alleged disability. Simply, Plaintiff has not carried her burden at Step Two and the ALJ was under no obligation to investigate a claim Plaintiff failed to assert.

Accordingly, the ALJ did not err.

## II.  Substantial evidence supports the ALJ's RFC.

Plaintiff argues the ALJ failed to identify medical evidence regarding her ability to function within the workplace to support the medium RFC determination. The Commissioner disagrees.

"A claimant's residual functional capacity is a measurement of their ability to do sustained physical or mental work, despite their health limitations." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1545). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Hensley v. Colvin*, 829 F.3d 926, 931–32 (8th Cir. 2016) (citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. . . . However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* at 932 (citations omitted). The RFC determination is ultimately an administrative decision reserved for the Commissioner. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

5

Here, the ALJ considered the entire record, including Plaintiff's medical history and daily activities. The ALJ determined the medical record reflected "clinical examination findings demonstrat[ing] few abnormalities" and "generally normal physical examinations." R. at 22; *see also* R. at 24 (discussing Plaintiff's "Performance Status: ECOG" and "Mayo Pain Scale" scores indicating "no performance restrictions" and "no pain"). As to daily activities, the ALJ noted Plaintiff lives independently with family, performs personal care, prepares simple meals, performs household chores, and walks for exercise. R. at 23–24. These are specific considerations of Plaintiff's ability to function within the workplace, and they are supported by evidence in the record.

The thrust of Plaintiff's objection, however, is the ALJ's dismissal of her oncologist's opinion that she was extremely limited in her ability to stand, walk, sit, lift, or maintain other basic work activities. *See* R. at 24–25, 759–62. But the oncologist's opinion was provided eighteen months after the date last insured and did not indicate whether the limitations existed during the Relevant Period. *See* R. at 762. The ALJ found the oncologist's opinion unpersuasive because it was "not supported by and consistent with the available evidence" during the Relevant Period. R. at 25; *see also* R. at 22–24 (discussing the available evidence).

Upon review, the ALJ's medium RFC determination is supported by substantial evidence in the record. There is no error.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  January 22, 2024                     /s/ Greg Kays
                                            GREG KAYS, JUDGE
                                            UNITED STATES DISTRICT COURT